Justice of the United States Court of Appeals for the Second Circuit, hear ye, hear ye, hear ye, all persons having visited before this a stated term of the United States Court of Appeals for the Second Circuit, draw an ear, give your attention, and ye shall be heard. Thank you. Please be seated. Thanks for convening this afternoon. We have Judge Debranis who is participating by Zoom, but you'll see him on the screen by the podium. We have one argued motion and two merits appeals on our calendar this afternoon, one of which will take on submission. The submitted case is case number 2413, Hay v. Bollinack. We'll hear argument first in the motion for bail, case number 2517-37, United States v. Truglia. Ms. Lachausen. Good afternoon, Your Honors. May it please the Court. Nicholas Truglia had finished serving his prison sentence when the Court resentenced him to eight years for failing to pay his restitution using a rarely invoked statute. This case is unusual. It raises novel and substantial constitutional questions. Well, he hadn't really finished serving the sentence because the sentence was always contingent on his paying the restitution, right? He had finished serving his prison sentence, and he had no notice that there was this other provision that would allow him to be resentenced to, in fact, a term eight times longer. Well, it's in the statute, right? And then I take it that it's also mentioned in his plea agreement. It was not mentioned in his plea agreement. No, and not at his plea proceedings. It mentioned that he needed to pay restitution, but not that there was this other scheme where he could be resentenced to 20 years without potentially any credit for the time he had already served. Well, he did get the credit, right? This is about the constitutionality of the statute. Your argument with respect to the notice at the plea proceedings doesn't seem to go to the constitutionality of the sentence. Are you saying that the defect was in the plea proceedings? I'm having trouble understanding the relevance of that. Well, the due process violation is that Mr. Trulia received no process related to this resentencing. He had no notice at the plea proceedings. He had no charging document. He had no hearing involved with this. And that makes it completely different than what the government is saying, that this is just like supervised release, where you have all of that process. Before we talk more about that, I mean, to get – this is a motion for a bail pending appeal, right? Yes. And so it's relevant not just that he has an argument that could lead to vacanter of the sentence, but also that he's not a flight risk or a danger to the community, right? That's right. He's not. And so, I mean, in these cases, right, he has a 12-year sentence, right? He left the district without permission. He has access to all of this money in the form of cryptocurrency. He was found with fraudulent identification. Doesn't that all suggest that he's a flight risk? No. So, first of all, many of those things that Your Honor mentioned are not findings that the district court made with regard to his bail. The court did say that he had left the district once without permission to a different district of Florida where he was living. That had nothing to do with any risk of flight from the country. On the contrary, he is a U.S. citizen who has lived here his entire life. He has no ties internationally. He has strong community ties here. His father is here. He has very close friends whom he was living with. And what about the idea that he has access to a lot of money in the form of cryptocurrency and also fraudulent U.S. and foreign identification? The evidence doesn't show that he has access to a substantial amount of money. On the contrary, the PSR says that he had negative net worth, which the government did not object to. It didn't recommend a fine because he couldn't pay it. The evidence simply doesn't show that. As far as the fraudulent... I get the evidentiary question. But putting that aside, if, in fact, that were true, that he had access to substantial funds and he had the foreign identifications, would that show a risk of flight? Maybe, but those aren't the facts here, Your Honor. So the identifications were many... To the community, right? So one of the release violations was the communication of a threat, right? And also he's dealt with ammunition and drugs. So Your Honor is talking about pretrial release violations that were many years old, maybe seven in some cases. What we have now is a history, a recent history of compliance, of nine months that he was released on his own recognizance with no bond conditions at all, where he reported to court every single time as directed, was on time, and probation had no cause to have a complaint. So his recent history is what is most important to whether he will show up to court, especially when he was only 21 years old at the time of the conduct Your Honor is talking about. With respect to the threat, even the district court didn't take any action. So I'm not sure, I obviously wasn't there nine years ago in this case. Those don't show that he's a risk of flight or risk of danger, and the district court also didn't consider whether there were any conditions that could address his concern for Mr. Trulia. Here, Mr. Trulia has already served more than the recommended guideline sentence on the corresponding violation of supervised release for not paying restitution. By the time his appeal has occurred, he will have served the statutory maximum for that violation. Ms. Glashow, can you walk me through, from your perspective, what the evidence shows with respect to risk of flight, and particularly with respect to the identification cards and the access to money and the ammunition? I was under the impression that the district court adopted the findings of fact of PSR that referenced the identification cards, but I may be wrong. Walk me through the evidence from your perspective. That was an allegation from a state arrest in Florida during his pretrial proceedings. Many years ago, before he served his prison sentence on this case, before he was released, and before his recent compliance. The charges related to the identification documents and ammunition, they declined to prosecute in the state, and the government declined to go forward with those charges in the federal court. So I don't think that that is something that Your Honor should be looking at today, as far as risk of flight, when there is this substantial compliance today, the most recent time period, even though there were no conditions. And here the judge could have imposed conditions that would have addressed any concern. Nine months is a substantial period of time to be showing up to court, including Why didn't the PSR say that in May of 2023, Krugli was found in possession of New York State and British identification documents, affixed with photographs and reflecting information of other individuals, and not of his own true identity, May of 2023? So I apologize, Your Honor. The government did not go forward with the violations of supervised release with respect to that particular charge, and the state declined to prosecute. So there hasn't been a finding with respect to that, and there's also no How did the district court adopt that finding from the pre-sentence report so that there actually has been a finding? The district court did not mention that at all with respect to Bail, Your Honor. This is an individual who has been showing up to court, including after the district court threatened to sentence him to 20 years for failing his restitution. He came to court the next time. He is somebody that has no history of evading the court, and I think that is the relevant time period to look at, especially when this is such an unusual case. There's no sentence across the country that is anywhere near as draconian as this one for failing to pay your restitution. This is not actually a sentence for failing to pay the restitution. This is a sentence for the initial wire fraud offense, right? Well, that gets us into the double jeopardy argument, Your Honor, which is also a substantial question, because as the district court framed it, he was sentenced again for the exact same crime he had already been sentenced for. That is the definition of double jeopardy, and yet his sentence was eight times longer. I understand you're saying you didn't have notice, but there is a statute, and let's say, just to make it easier, that you did have notice. Let's say the district court was crystal clear the first time it sentenced to say, your lighter term of incarceration is contingent on your paying the restitution. If I later find that you willfully refuse to pay the restitution, I'm going to rely on the statute and sentence you to anywhere up to 20 years because that's what I could have done the first time. Would that be double jeopardy? Like, how could it possibly be that you think that the sentence was final if it was expressly contingent? It might not be double jeopardy if he was told at the time of his plea agreement that this could happen, and that was part of the bargain that was made. That would be a different situation, certainly, because the double jeopardy case law talks about your expectation of finality. Here, he had one. You're saying double jeopardy not because it's improper to do a resentencing under the statute after somebody doesn't pay restitution, but just he didn't get enough notice up front? No, I think it would still be improper. I am not aware of any other similar regime. This court has talked about the narrow circumstances when you can do a resentencing in Kyle's, which is one of the cases we cited as far as double jeopardy. This is not mentioned. This is not something that is contemplated by the parties at that district court. So your position is that the statute is unconstitutional? Congress was not allowed to authorize the resentencing upon finding that the local refuses to pay restitution?  Congress could authorize it. Can you refresh me how long restitution obligations last? My recollection is that they continue for an extremely long time, which is capped by Congress at something like 20 years. Correct, Your Honor. 20 years. So under the statutory regime, there's also no indication that he couldn't be resentenced again for this statute to another 20 years and that those sentences could continue on. My question is how long does the restitution obligation last? Supervised release comes to an end. Correct, Your Honor. How long does his restitution obligation last such that at any point during that time period, a willful failure to pay would give rise to resentencing? That's also 20 years, Your Honor. Yes. And that raises the Apprendi violation, which is kind of within the due process concern and the double jeopardy concern. Here, he can be sentenced to more than his statutory maximum term, either on the first resentencing under— First of all, he wasn't. So why do we think that he could have been? Well, that's not how Apprendi is analyzed. That's true in Haymond as well in the supervised release process. Well, the Apprendi violation is 20 years, right? Correct. And so he's being resentenced to 12 years and is credited the 18 months he served. That's all below the statutory maximum. So the district court didn't do anything to raise the statutory maximum. But when the possible statutory maximum is raised on judge-found facts, so when it's 20 years plus what you had originally and that that can happen again— So then you're saying that the constitutional argument, even though it didn't happen to him, relies on us reading the statute to say you could be resentenced to an original sentence without any credit against the time that you served, right? Well, that's what the statute says. I think it just says he can be resentenced. He can be sentenced to any term of further imprisonment. Sorry. Can be resentenced to a term that could originally have been imposed, right? Right, and that would be 20 years. Usually when we say somebody can be sentenced, everybody understands that if they've served time pending trial or whatever, that's going to be credited against the sentence. Why wouldn't we just read the statute reasonably to imply the same thing, that if you serve time in prison, that's always going to be credited against the sentence? But that's not the way supervised release works, right? In violation of supervised release, you can be sentenced for the full amount without any credit for time that you've served. Originally, that's correct. And unlike supervised release, unlike the examples Your Honor has given, there is no case law relating to this section and analyzing any of these constitutional questions. So there isn't this expectation. Okay, so if that is a plausible reading of the statutes, and I'm sort of determining whether you're likely to prevail, why wouldn't I say that it's likely that court is going to read the statute the way I've described to avoid a constitutional problem? Because we have three constitutional problems here, Your Honor. We have the lack of due process, we have double jeopardy, and we have apprendee. This statute reads more like a new criminal charge. It opens you up to a new 20-year sentence. There's no separate process, as in the supervised release context, for how you deal with a violation. It's something that is more like a new criminal charge where you get all of your constitutional rights. Unlike supervised release, there's no case law explaining why that wouldn't be so. Do you think it's possible to have a criminal sentence that is contingent upon complying with a restitution obligation that could trigger a greater term of incarceration if you willfully refuse to comply? Well, yes, that's what the supervised release system... So if Congress wanted to write the statute in a way that is constitutional, how would it vary from the statute? It would be under the supervised release regime. So if the guideline range, which is another of the arguments that was made below, is tied to the supervised release sentences, then that might make sense. If it's for a probation violation, that might make sense because probationers know that they are getting a probationary sentence instead of incarceration and that that can change during the term of their probation. That's a different regime. They maybe could set up constitutional protections like supervised release. That could happen, but none of that... What are the constitutional protections that you would have that are lacking here? It's just a notice question? Is that what you're focused on? It's notice, a charging document, a hearing. None of that happened here. So he had a hearing on his violation of supervised release where the maximum sentence was two years. That violation process proceeded normally. He had a charging document, a hearing. He had a hearing on whether to willfully refuse to pay the restitution, right? He had a hearing on a violation. So my question, sorry for interrupting, is I thought from my review of the lower court document that the government's order to show cause as to which there was a hearing issued asked for the defense to show cause, number one, why your client should not be held in contempt, but number two, why he should not be re-sentenced. So it seems to me that he was given notice before there was a hearing and then the district court judge gave him an opportunity to submit any additional evidence he wanted. Why isn't that sufficient from a due process standpoint? Because that notice co-stated the hearing. So the hearing was for the violation of supervised release. That took place when? I believe the order to show cause was in February of 2024, and I believe the hearings were the preceding fall in November and December. So the notice of the, you can't get notice of your charge afterwards. Okay, so if he had the hearing on whether he willfully refused to pay restitution but thought that that was about a supervised release violation and not about a re-sentencing, how would the evidence he presented have been different if he knew that it was also about a re-sentencing? I don't know the answer to that hypothetically, Your Honor, but I do know that when you're facing a maximum of two years incarceration versus a maximum of 20, that your approach might be rather different. And these are just two different regimes. Well, if I'm not understanding the importance of the notice, so if my thought is, well, he does have notice and opportunity to be heard on whether he willfully refused to pay restitution, and you're saying, well, he didn't have full notice about what was at stake when he was contesting that, how would it have been different? It's not just an opportunity to be heard, Your Honor. It's also the right to process evidence. It's the right of the witnesses. It's, at least in the supervised release context, a jury trial right. I am arguing that here it's more like a criminal statute where he should have been entitled to all of his constitutional rights, including the right to a jury trial if he chose to have a trial as opposed to reach a plea agreement. He should have a jury trial on the question of whether he willfully refused to pay restitution. Whether he violates the statute, 3614. He doesn't need to go that far to win. That's correct, Your Honor. Certainly. I think that this robust debate that we're having shows that these are substantial questions. These aren't ones that have been decided. They're not ones the government can point to where a court anywhere in this country has addressed these issues. This is a unique circumstance, and Mr. Trulia will have over-served his sentence by the time we get to a decision on these actual issues by the court. Your Honor, you don't have to agree with me to grant Mr. Trulia bail. Okay. Thank you, Ms. Gladstone. Thank you. Mr. Capozzi. Good afternoon. May I please the court? I am Timothy Capozzi. I represent the government in this case, and I represented the government below. This court should reject the appellant's request for bail for two independent reasons. First, the district court did not err, and certainly did not clearly err when it determined that the appellant is a flight risk and a danger to the community. Second, the appellant has not raised a substantial question. Mr. Capozzi, on that point, Ms. Gladstone was just saying that the district court didn't rely on these facts about having a foreign identification and leaking the prescription and so on. Is that—can you speak to that? My recollection is consistent with Judge Lyman, that the district court adopted the PSR. In terms of his written—in terms of Judge Hellerstein's written opinion, that was, I believe, two pages. He did not cite the facts as to the identification. But even independent of those— Isn't that actually what a district court judge is supposed to do? I mean, I think that's the practice ordinarily, that we make findings that support the conclusion that we ask that we adopt. Correct, Your Honor. And the findings that the court made did support the determination that he made, that Judge Hellerstein made. Judge Hellerstein referenced the fact that this defendant has a tremendous incentive to flee at the point that he's been resentenced to 12 years. Judge Hellerstein referenced the fact that this defendant had traveled without permission before, and Judge Hellerstein referenced the fact that this defendant had repeatedly defied court orders. Now, I don't believe this court is limited to the reasons that the district court gave. I think this court can look at the complete record before it and the evidence. Correct, Your Honor. And that record before your honors is, again, not only does he have this obvious incentive to flee that did not exist nine months prior, which did not exist at those times when he appeared in court. At that point, he was not sentenced to 12 years. Once he's sentenced to 12 years in prison, and the court has made the same proceeding a finding that this defendant had made statements during an interview that he could serve 12 years and then enjoy the proceeds of his crime, well, then the district court has... He said he had arranged things so that he could enjoy the fruits of his crimes after serving 10 years. Well, it cuts two ways. One, I think it cuts towards his dangers of the community. That is, clearly that incarceration is not a deterrent to him. So on the dangers of the community, it cuts that way. And then on the risk of flight, yes. If he has an opportunity to not serve that 10 years in prison, he has the assets to find it. Correct, Your Honor. Can you tell me what notice Mr. Truglia had before the evidentiary hearing that a consequence of the evidentiary hearing might be resentencing up to the statutory maximum for the underlying crimes before the evidentiary hearing? Before the evidentiary hearing, the appellant received a letter from the government that the government was considering seeking resentencing. That letter was reviewed with him, with his probation officer. He signed it. That was in, I believe it was March prior to the evidentiary hearing. Then in July in court, the government again reiterated that it was considering or there may be grounds for a resentencing. That was prior to the evidentiary hearing. Judge Hellerstein scheduled the evidentiary hearing because the appellant requested the opportunity to examine a witness. And Judge Hellerstein... Well, I mean, all that's true, but it also is the case that at the time of the resentencing, defense counsel said, my client wants to testify. He wants to be heard. And the government was just silent about that. It did not say anything about, well, let's give him an opportunity to be heard. You would have been a lot better off if you'd let him be heard. And the judge just slammed down defense counsel and said, no, I already made my findings at a hearing that was not scheduled for the purpose of determining whether there was willfulness under 3614. At the conclusion of the evidentiary hearing, Judge Hellerstein made clear to the appellant that he was considering resentencing and gave him an opportunity to supplement the record. The appellant did not take advantage of that opportunity. The resentencing was not for another year and a half. At every step of the way, this appellant made excuses, led the victim on a wild goose chase, tried to delay things, and then... How difficult would it have been to just say, sir, you want to testify? Come up to the witness stand and testify. And he had multiple opportunities to do that. What does the government just say at that point? Let him testify. We'll cross-examine him. Your Honor, perhaps I should have said that. But that does not equate to any constitutional issue of... that results in a closed question. I mean, the constitutional issues that they've identified is a double jeopardy question. So, like, after he found out that there really was a resentencing at SIG and you had a year and a half and then a hearing at which Judge Hellersen imposed a new sentence that he ever stayed during that time, that now that he understands what that's like, he would like to testify? The resentencing was scheduled for March of this year. The defense then requested an adjournment, which was granted. It was scheduled again and again and again and kept being pushed off. Then, literally on the morning of the resentencing, the appellant produces this letter as an attempt to further delay justice. We have a victim who's been pushed one way or another, waiting for, finally, this escapade to end, and Judge Hellersen put an end to it. After two and a half years going back and forth. What work does 3614 do that supervised release doesn't do and contempt doesn't do? I mean, ordinarily, restitution order is the order of the court. The judge imposed contempt. The judge could have imposed criminal contempt. And the virtue of supervised release. I mean, we always make restitution a condition of supervised release. I'm now wondering whether that is something I should make a condition of supervised release because it sounds like it doesn't do anything other than what 3614 does. So help me make sense of all this. There's a statutory regime that Congress created, and restitution is part of a sentence. If you don't comply with your obligations to pay restitution, you are not complying with your sentence. So Congress created a regime which would allow the court to deal with a situation just like what happened here. You know this, there are Hobbs Act robberies where people may take some sum of money. The defendant is indigent. The defendant has always been basically indigent. The money vanishes. And under your view of things, for the 20-year time period that restitution obligations last, that person is forever subject to the government just saying, all right, we now believe that you haven't paid and it's willful, so we're going to now call you back in. And you can be sentenced up to the full maximum for a Hobbs Act robbery. I take it that's your position. The position is that if there is... And also that the person is not indigent. If indigence is the reason, then the statute is unavailable. I understand that, but forever the person is... As long as the restitution obligation remains outstanding, the person is forever in jeopardy of the government rightly or wrongly making that accusation, then obviously he's got the opportunity to defend himself. In that circumstance, is it the government's obligation to prove willfulness or is it the defendant's obligation to prove lack of willfulness? Whose burden is it and what's the standard? Your Honor, I... I don't believe the statute is clear on it. I believe that it's the... And I believe it's a preponderance burden. Counsel, this is Judge Kobranich, far away in New Haven. Quite apart from the statutory regime that has been discussed and the constitutional issues of great importance that have been raised by Ms. Glashauser. Let's go back to Judge Monasch's very first question to the defense counsel, which was to focus on flight risk and danger to the community. Isn't that the issue before us now? Your Honor, certainly if the court finds that there's a... To put it another way, all of these portentous constitutional questions which have been raised will be, can be considered by a merits panel of the court and we can, for example, expedite briefing if necessary. Isn't that right? Absolutely, Your Honor. So the only question before us at this point is flight risk and danger to the community. Is that right? Your Honor, either, if there was... I believe this court could decide it on either ground. If there's no closed question, it could be decided on that ground, but if there's a flight risk or danger to the community, the court could decide it on that ground. Yes, but my point is this motions panel really doesn't have to address with any kind of finality the portentous questions, constitutional issues, and statutory issues. Right? Correct, Your Honor. This court can decide that Judge Hellerstein did not clearly err in his determination about the appellant's risk of flight and danger to the community and leave the other issues for a merits panel. But that's only if you're persuaded that it's correct that he is a flight risk or a danger to the community, right? It's rather whether or not you find that the court did not clearly err on that question, keeping in mind the great deference given to the district court on such issues. The district court that has presided over this appellant for about five years. So, Mr. Blackhazard mentioned that when they found the fake IDs and the other materials, the government didn't pursue a violation proceedings. Does that matter in terms of the probative weight that should be accorded to that evidence? There was a specification in the violation report related to those false identifications. The court decided to prioritize trying to make the victim whole with the restitution issue. The restitution issue essentially took center stage, and the violation of supervised release was essentially mooted by the resentencing. So there was no final decision about not having a hearing or having a hearing about it. Rather, the priority was on the restitution, and once it was established that this defendant had willfully failed to pay restitution, the court went forward with the resentencing and did not then schedule a further hearing on a violation that was essentially mooted. I take it your argument is that for bail determinations, courts don't have to have hearings with respect to the underlying facts. The court can rely on proffers from the government as long as they're not disputed. Absolutely, Your Honor. Is your reading of 3614 that the defendant can be resentenced again to the full statutory maximum without any credit for time already served? Yeah. Why? Your Honor, I think for the reason I believe you were suggesting, which is that a court would read it to avoid constitutional issues, and I think that some of the scenarios that they play out, which are not present here, would potentially create constitutional issues. So with that, I mean, I've been under the impression that for supervised release that you can be sentenced to the full amount without any credit for time served. In fact, that's the litany that we always deliver when people plead guilty. You're saying that that's not so with respect to this statute? Your Honor, I believe that, and I defer. I'm sure you're more familiar than I am, but I believe in the supervised release context, there is a limitation on the number of, I think. You might check the law on that. Well, my recollection was that there's a limit to the number of years. You can't resentence someone three years, three years, three years, three years, over and over again if the max was three years, that there's a subtraction for time served following an initial revocation of supervised release. But there's no credit for time served with respect to the underlying crime. Okay. Thank you very much, Mr. Capuzzi. The motion is submitted. We'll hear argument next in Case No. 23-8426, Glenn State v. Andrews. One second. Ready? Okay. Mr. Draytel. Thank you, Your Honor. My name is Joshua Draytel. I represent Lemory Andrews and this appeal. I want to put the cart before the horse a little bit in the sense that the government's 28J letter from a few weeks ago suggests at the end that perhaps the court should wait for the Supreme Court's decision in Fernandez in which cert has been granted. Argument is scheduled for November 12th to reach a decision in this case. And I think with respect to the merits, that's a prudent idea given the importance that Fernandez has for the government and how it's a binding decision for this court, even though I think it's distinguishable for reasons that are in our brief, and I can repeat here. But Fernandez, you know, binds up and it says that under the statute we can't because the behavior statute is more specific, we can't consider challenges to the conviction through a motion for compassion. Right? Right. But here in order to avail you have to show not just that you comply with the statute, but the statute cross-references the guidelines, right? And that's a separate question. You need to comply with the guidelines and provisions. Yes, but I think we do for reasons that I can get into, Your Honor, I wanted to talk about. So is your suggestion that we wait until after Fernandez has decided? To decide this case, yes. You're in agreement with the government on that point. Yes, I am. With respect to the I mean, let's go in backwards order. So, you know, on the one hand, you don't disagree that even if all of the predicates for granting a motion for compassionate release were satisfied, the district court could still deny the motion based on its consideration of the 35 of the 3A factors, right? That's where I wanted to go first, Your Honor. That's where I wanted to go first, Your Honor. That's right. So I anticipated that would be obviously an issue here. And I think there are several problems, significant material flaws in the district court's analysis with respect to 3553A. But also in terms of doctrinally, this court has always held that with respect to guidelines and issues, if a mistake is made as to a guidelines range, that affects where you end up. Even if the court is within the guidelines or under the guidelines, where you start affects where you finish. And here, by the court saying, well, you don't have a basis, you don't have an extraordinarily compelling circumstance. It was treated in the context of sentencing where the guidelines range provides a baseline and a starting point for determining a sentence. That's not what we have in the motion for compassionate release, right? The district court here is saying, I don't think you're eligible because of the way the guidelines work. And separately, regardless of any of that, I wouldn't grant it because of the 35 of the 3A factors. The guidelines are not an anchoring. They don't have the same anchoring effect. It has some anchoring effect in this sense. It's supposed to be balanced. If you find an extraordinarily compelling circumstance, then you balance it against the 35 of the 3A factors. And then you come up with an answer as to whether or not the circumstance that's extraordinarily compelling outweighs any adverse 35 of the 3A factors. Or if the 35 of the 3A factors have improved somewhat, then you can use them to improve that. But, Your Honor, but the — How can you say that the district court could deny a motion without even considering whether they're extraordinarily compelling or not by just going straight to the 35 of the 3A factors? They're not supposed — they're first supposed to find whether there's an extraordinarily compelling consideration. And then they're supposed to consider that in the context of the 35 of the 3A factors. So that's not the way it's supposed to be done procedurally or substantively. And in this case, if you look at it in terms of the — how can you balance it when you say there's no extraordinarily compelling reason? The 35 of the 3A factors are — they can't be compared to anything. So also the — What are you comparing it for? The 35 of the 3A factors are the nature and circumstances of the offense and the need for deterrence and all of that. You're not comparing it. Well, I am in this sense. You're considering the circumstances of the defendant, right? Well, no. I'm comparing it to this. He's in jail serving a portion of his sentence solely attributable to conduct that is not a crime. I would consider that maximum extraordinary, the most extraordinary and most compelling circumstance that would outweigh virtually every 3553A factor. And in this instance, the court sort of went back to the beginning of 2003 when she first sentenced the defendant, when she shouldn't have in the sense that the court, Judge Buckell, should have looked at it right now. And right now, since he's only serving that portion attributed to conduct, that is not a crime. That's not what I mean. What I mean is how to evaluate the 3553A factors. They're evaluated now, not as of 2001. He's only serving, if you say, okay, what's the 3553A factors? There is no crime. He's serving time right now for something that wasn't a crime. There's no just punishment. Because of your idea that he's only serving the 924C portion of the sentence, you should not consider any of his other offenses or any of the other conduct. No, you have to consider in the context of where he is right now. There is no just punishment for something that's not a crime. There is no deterrence for something that's not a crime. There are no nature and circumstances. The argument that you're advancing right now is that it would be erroneous to think about the whole package of offenses and the course of conduct in which he engaged. The district court was obligated to only consider the 924C conviction in isolation. She should, but even if she didn't, it would be something that would be a factor that the district court did not factor in at all. The district court never considered that. Considered what? Where we are right now with a situation where this defendant, Mr. Andrews, is in prison solely because of conduct that is not a crime. That's the part of his sentence. He has 60 months consecutive. Okay, I think I understand that argument. Can I ask about the guidelines? Sure. The guidelines say even if there is a change in law, let's put aside whether it can be retroactive or not retroactive, but you only rely on a change in law where the change would produce a gross disparity between the sentence being served and the sentence being imposed at the time the motion is filed. The district court says that the sentence you received initially is within the guideline range that would apply today. In fact, it's at the lower end of the guideline range. And so there is not a gross disparity. So is that also a separate justification for denying the motion for compassionate release? No, Your Honor. I don't think so for two reasons. One of which is there's a disparity in terms of how the district court responded to the motion by the co-defendant, Gary Jackson. In a different context, but that creates a disparity where one person is out of jail because of crime. Because of the compassionate release motion, he filed a habeas petition. But it's still a disparity. He didn't commit exactly the same crime. A RICO conspiracy versus a substantive RICO for purposes of sentencing, for purposes of the guidelines, is the same offense. I'm sorry, but the guidelines talk about a gross disparity between the sentence that would be imposed on Andrews today and the one that was actually imposed on him before. It doesn't talk about a disparity between him and another defendant. So the district court explains that the sentence that would be imposed today, the sentence he got is still within the lower end of the guidelines range that applied today, and it's not a gross disparity. But there is a disparity there. And it's a disparity that is enhanced, accentuated, aggravated because of the specific particular unusual, I don't know if it's unique because it's the first time I've had it, where someone is in jail solely attributable to that portion of the sentence that is not a crime. That is a disparity with the guidelines range. And the court never says, Judge Bogle never says in her opinion, I would have given him the same exact sentence. She doesn't say that. She says, well, it's still within the guideline range and all that, but it doesn't mean it's not a disparity, and it doesn't mean that she wouldn't have given the same sentence. If a defendant would get the same sentence or possibly a higher sentence, because this is at the low end of the guidelines range than the one he got before, why does that show that it's not a disparity? Because it's still a disparity. It may not be a level of disparity that is, it's still a gross disparity, Your Honor. It's a gross disparity because he's in jail for something that's not a crime. I can't think of something more disparate than a sentence that has someone in jail for something that's not a crime and someone who's not in jail because he didn't commit the crime. That's the most disparate I can conceive of. Right. So you're saying that if we consider only the 924-C charge in isolation, then at time one he got a sentence of five years, and at time two he would get a sentence of zero years, because it wouldn't be a crime, your sentence. That's what the sentence was. But it's actually the sentence for a number of offenses. And the court could have made all of it concurrent in some fashion, but the court didn't. The statute requires it to be mandatory in Kentucky. To some of the counts, not to all the counts, only to the count that it qualifies to. Can I ask another question about the guidelines? So the guidelines talk about a change in law, and the Sentencing Commission explains that that guideline is talking about changes in law that are not retroactive. Yes. They explain that detail, the reason it's adopted, that provision is because the circuit's flown that question, and here's how we're going to address it, and so on, In our circuit we read the sentencing guidelines in light of the commentary of the Sentencing Commission, so how would we get around that? There is a disconnect between the language in the actual section and the commentary. The actual section is categorical. There's an actual exemption for not retroactive sentencing guidelines issues. Why was it written that way? It says any change in law. It doesn't say any change, any non-retroactive. It says non-retroactivity only applies to the sentencing part, and when the court first Maybe everybody understands that if the change in law is retroactive, then you're going to have a repenting, and you're going to have a proceeding through habeas, and so a motion for the master release would only come into play if the change in law is non-retroactive. Well, why would that be, Your Honor? That's extraordinary. How would that affect the law of our circuit? That's not spelled out here. They're not talking about that. Also, when it first talks about the reasons for extraordinary and compelling reasons, when it first talks about it, this is in the explanation of reasons, and I think it's In the printed out version, I have it page 8 of 16. I forget the exact page. I think it's page 204 in the full range of sentencing amendments, but I can find that from the court, but it says one of the reasons for these two sections, B and C, which permits a judge to consider a non-retroactive change in sentencing law as an extraordinary compelling reason, sentencing law, this is not a sentencing law change. This is a substantive law change, and that's why that exemption is in that parenthesis for a non-retroactive guideline, because they're talking about sentencing law, and because later on, a couple of times they mentioned law without saying sentencing law, is just, I think it's imprecision. I don't think it's an intention to discard the categorical language. Why would that language exist? Why would they not just say non-retroactive? The explanation from the Sentencing Commission talks about non-retroactive changes in law. When you say changes in sentencing law, are you talking about the, where it's explaining the circuit split and the character... No. I'm talking about the very second paragraph, where it says revisions to extraordinary compelling reasons, and it summarizes all of them. It talks about A, B, C, and says D, adding a new ground called unusually long sentence, which permits a judge to consider a non-retroactive change in sentencing law as an extraordinary and compelling reason in specified circumstances. That is very specific. That conforms with the language in the guidelines itself, which says... How does that help you? So if the guideline says, the Sentencing Commission is saying, it's not just a non-retroactive change in law, it's a non-retroactive change in sentencing law, that's not what you have here, right? We don't have changes in sentencing law. We have changed substance in law. David says it's not a crime. That's a substance change. So the Sentencing Commission does not believe that B6 applies in this circumstance? No, it does. Because it says it permits for... It changes sentencing... It not only changes sentencing law, but it says any change in law. It doesn't... The sentencing guideline itself is unambiguous. It is categorical. A change in law, other than an amendment to the guidelines manual that has not been made retroactive, may be considered in determining whether the defendant presents an extraordinary propelling reason. Yeah. You should discount the commentary and only focus on the language of the guideline. No. I'm saying that... Well, if they're compared with the two of them that are in conflict with each other, with the plain language of the guideline, which is what actually controls, the plain language of the guideline, if that is in conflict with the commentary, I would say two things. I would say three things. One is the guideline controls, not the commentary. Second is the rule of lenity would have it be that it is in Mr. Andrews' favor. And the third... The guideline controls if they're contradictory. Right? Yeah, I think... There's no way to understand B6 other than saying even a retroactive change in law is an extraordinarily neutral circumstance. It's a categorical... They say an amendment to the guideline manual that's not retroactive does not count. Right. But if Congress changes the law and that's retroactive, that does count. Well, no, but it's a change in law. It doesn't say a change in legislation. It says a change in law. And if they have a change in the law, that's not... Oh, it's just because a Supreme Court decision. Yes. But what would you do about a statute that's retroactive? Well, that could be true, but that's not... But the point is the statute... The guideline doesn't make those distinctions. It says any change in law. And then it has a parenthetical that conforms with the notion that the only non-retroactive parts that are... that are precluded are the sentencing ones. You know, if it's a non-retroactive guidelines amendment. But the point being that any change in law... I don't see how that could be anything but what it says it is. Okay. Thank you. Good afternoon, Your Honors. May it please the Court. Henry Ross for the United States. I represent the government both in this appeal and in the district court proceedings below. Because the defendant's Davis claim was cognizable via a successive Section 2255 petition, that claim cannot be brought via a compassionate release motion as this Court squarely held in Fernandez. However... That's not an issue with the Supreme Court. I agree, Your Honor. With Fernandez pending in the Supreme Court, this Court can and should affirm Judge Buchwald's decision for three independent reasons without the need to consider the party's arguments regarding Fernandez. First, Judge Buchwald determined that even if the defendant's Davis claim were cognizable on a compassionate release motion, she still would not reduce his sentence based on his individualized circumstances under subsection V6 of the policy statement. That determination was well within Judge Buchwald's discretion. Second, Judge Buchwald also acted within her discretion in determining that a sentence reduction would be inappropriate in light of the Section 3553A factors. And I'll pause here to respond to your question, Judge Menachie, which was whether either ground, a 3553A ground or a lack of extraordinary and compelling reasons can be the basis for a denial of compassionate release and for this Court to affirm. And, of course, the district court may rely on either of those grounds independently and this Court may affirm on either of those grounds independently. One, failure to establish extraordinary and compelling reasons or, second, failure to establish that a sentence reduction is appropriate under the Section 3553A factors. Third, Your Honor... Your Honor, didn't Gray-Tail objected that, you know, the way you should think about it is the balance of 3553A factors against the extraordinary and compelling circumstances. But we've said that a court can consider either one independently and not even consider the other one, right? That's right, Your Honor. A defendant has to establish both in order to be granted compassionate release. The defendant has to establish extraordinary and compelling reasons and the defendant has to establish that a reduction would be appropriate in light of the 3553A factors. Should I make anything... What should I make of the fact that Judge Buchwald's language was very careful. She actually doesn't say, as I think a number of our decisions say, that the 3553A factors provide an independent basis. She says several times the 3553A factors counsel against release. It's more guarded language suggests, doesn't it, that she's not relying upon it as an independent basis. I don't share that reading, Your Honor. I do think that Judge Buchwald's opinion is fairly read as also separately and independently relying on the 3553A factors. But I think a very important point here, and this is based on the particularities of subsection B6 of the policy statement, is that the individualized circumstances analysis, which is actually under the extraordinary and compelling reasons analysis, and the 3553A analysis are very closely connected. In other words, what the policy statement asks the district court to do here is to consider individualized circumstances much the way that a district judge would in the 3553A context. And here, Your Honor... Is full consideration of the defendant's individualized circumstances as that of the 3553A factors? I think they're closely related, Your Honor. I think there are broader considerations with respect to the 3553A factors. But what guided Judge Buchwald's determination in this case was really the same set of facts. It was not only the extremely serious offense conduct by the defendant, but it was his abysmal, his atrocious conduct while in prison over the course of years. And to your question, Judge Lyman, Judge Buchwald was very clear on page 13 of her opinion, at page 253 of the appendix, to say that subsection B6, and specifically the individualized circumstances prong, provided a separate basis for the denial of the compassionate release motion, even if Judge Buchwald's analysis of subsection B6 and her analysis of Fernandez and Amato were incorrect. And so, Your Honor, subsection B6 here, which is reviewed under an abusive discretion standard, provides a sufficient basis standing alone, even putting aside the 3553A analysis, to affirm Judge Buchwald's decision. Now, I also want to get to the third independent basis that this Court has for affirming Judge Buchwald's denial of the defendant's motion, and that's the fact that the defendant's claim, his Davis claim, did not constitute a qualifying change in law under subsection B6 of the policy statement. The reason for amendment makes this clear no less than six times when it says that the change in law must be a non-retroactive change in law. And that makes sense, because Congress has provided a separate vehicle for section 2255 eligible claims, meaning retroactive changes in law, whether constitutional or statutory, can be raised by a defendant via the section 2255 process if the defendant complies with those procedures. That is a wholly separate process from what the Sentencing Commission had in mind when it was passing subsection B6. So that's true. That's true. But, you know, Mr. Duratel says, but B6 itself just says the change in law and does not say that it needs to be a non-retroactive change in law. So is that a contradiction between the guideline and the commentary? No, Your Honor. There's no inconsistency there whatsoever. The commentary, the reason for amendment, is simply clarifying what was obvious here, which was that the Sentencing Commission was not, in responding to the circuit split that you mentioned, Judge Menasci, the Sentencing Commission was not opening up a separate battle line on what this Court described as a near-unanimous consensus among the circuits with respect to the habeas channeling rule. The relationship between Section 2255... But the amendment says a change in law and it carves out an amendment to the Guidelines Manual that has not been made retroactive. It's because everybody understands the baseline is that it would not apply to a retroactive change in substance of law. That's exactly right, Your Honor. Multiple circuits, including this one, had held exactly that. And so the Commission was drafting this policy statement. It could have done a better job of drafting, but it drafted this policy statement against a backdrop where that statutory structure, those two separate channels for habeas-eligible claims and habeas-ineligible claims, were clearly established. In effect, it's not really possible for us to read the Guidelines in a different way, at least as long as Fernandez is the law of our circuit, because the Guidelines can't override what we say is the implication of the statute, which is that the habeas statute trumps the compassionate release one for retroactive changes in law. That's exactly right, Your Honor. I think even putting aside how Fernandez might or might not come out in the Supreme Court, the Sentencing Commission, just as a matter of policy, could have believed that this was a wise policy choice, even if it wasn't required by the statutory structure, to implement this habeas channeling rule via subsection B6 of the policy statement. But you said of the three independent reasons was individualized circumstances, 3553A factors, and the retroactivity of the change in law under the Guideline provision. What about the gross disparity? Your Honor, we don't raise that in our brief. I think it's an interesting point, and it may have some force to it as well. I will acknowledge that the way that the defendant's Guidelines would have operated here, regardless of the 924C conviction or not, there would have been a Guidelines range of 360 months to life. And then on top of that, the 924C, as I understand it, would provide a mandatory five-year consecutive minimum. On top of that 360 to life, on the remaining non-24C six counts of conviction. So I agree with Your Honor that in either circumstance, with a 924C conviction or not, the defendant is looking at a maximum of life and at a Guidelines range that includes a potential life sentence. I also want to respond to the... Did you argue that actually after the amendments about the marijuana convictions, that you could have had a downward departure that would have allowed him to stay in the criminal history category? Isn't that part of the issue? The defendant raised that argument in his opening brief. Appeals do have abandonment in his reply brief. I think Judge Buchwald's decision on this was very clear, which was that she did not view a downward departure as appropriate here. She believed that if the defendant were resentenced today, he would have the same criminal history and the same Guidelines range. And that was, of course, a correct determination by Judge Buchwald. But you did say, you know, at most, he could get one lower criminal history category, which would leave the range in which, you know, the sentence that he got still appears. That's right. Even in that circumstance, which to be clear, Judge Buchwald did not say was the scenario here, even in that circumstance, the sentence the defendant is serving would be within that revised Guidelines range. I also want to respond, Your Honor, to the notion raised by Mr. Grottel that the defendant is serving an illegal sentence. That is simply not the case here. First of all, the defendant's conviction is valid. His 924C conviction is valid because he did not comply with the procedural requirements of Section 2255 for vacating that conviction. But I think more importantly, even if there were no 924C conviction here, the statutory maximum, the aggregate statutory maximum on the remaining six counts of conviction would be decades higher than the 352-month sentence the defendant is serving. So the defendant, to be clear, is not serving, he's not still in prison because of his Section 924C conviction. He's still in prison because Judge Buchwald, who presided over his trial, his sentencing, and multiple collateral attacks on his sentence, has determined that a 352-month sentence is the appropriate sentence for a defendant who is a violent sex trafficker and the leader of a major criminal organization. And in fact, the way we think about sentences often is that it's the totality of all of the circumstances and the conviction. So if there were not a 924C conviction, it would still have been within her discretion to say that the possession of the gun was an aggravated circumstance and maybe that would lead to an increased sentence on the other counts. That's right, Your Honor. There's no factual dispute here that the defendant was standing outside the door with an AK-47 while his junior minor associate fired approximately 30 rounds through the door at the victim who was on the other side. So it clearly would have been within Judge Buchwald's discretion to assign different sentences to those remaining counts of conviction even if there hadn't been a Section 924C conviction here. And I see my time has expired. I'll briefly conclude by saying that the Supreme Court has explicitly endorsed this approach in a 2017 case called Dean v. United States where the court said that a sentencing court may take into account the five-year minimum on a Section 924C conviction in making adjustments as to the sentence imposed on other counts, meaning 924C does not operate the way that Section 1028A does where the court is prohibited by statute from considering the sentence imposed on the other non-mandatory minimum counts in imposing a sentence. Okay. Thank you very much, Mr. Ross. We'll get back from Mr. Graytail on the phone. Thank you, Your Honor. Just a couple of points. One is with respect to the balancing. It really depends on the force of each side of the balance so that if you had a situation and this happens all the time where people who have been convicted of murders, heinous murders, dismemberment murders, but have health issues that are extraordinary and compelling, that balances against 3553A. It's the force of the extraordinary, compelling circumstances which, again, I submit here is the strongest, is the most extraordinary and compelling. So that's integral to that consideration and without it, you have a factor. But you're saying if a court ever just didn't do both and just said the extraordinary and compelling reasons are so compelling that I'm going to release the person or said there is no extraordinary and compelling reason and so therefore I'm not going to release them or they said I don't care about extraordinary and compelling because the 3553A factors dictate how I'm going to decide this question. You're saying all of those cases would be erroneous because they're required to do both in every case? No, what I'm saying is that you can't have one without the other. You can't say that the 3553A... You can't have one without the other because they're either one that could be independently disposed of? No, you have to balance the two. That's the whole point of the statute, which is why you don't get to 3553A. The court is directed only to do that once it's found an extraordinary and compelling circumstance. The second part, just briefly with respect to the conduct in prison, misogynist, improper, violating the rules, no question. Profane, no question. That's not why we put somebody in jail. If that was a rationale for sentencing in the first place, it would not be proper. And here it's not a... It might be a reason to allow the motion for compassionate relief, though. For someone who's serving a portion of their sentence that's attributable only to something that's not a crime. That, to me, is the extraordinary, compelling factor here that has to be front and center, and it's nowhere really in the court's opinion. Thank you. Okay, thank you very much, Mr. Gretel. The case is submitted, and because that is our last argued case on the calendar today, we are adjourned. Court is adjourned. Thank you.